FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

FEB 26 2024
TAMMY H. DOWNS, CLERK
By:_____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:24CR0001-LPR |
| | ) | |
| FAMILY DOLLAR STORES, LLC | ) | |
| | ) | |
| | ) | |

## PLEA AGREEMENT

The United States Attorney for the Eastern District of Arkansas, Jonathan D. Ross, by and through the undersigned Assistant United States Attorneys, and the U.S. Department of Justice, Consumer Protection Branch, Amanda N. Liskamm, by and through the undersigned Senior Litigation Counsel and Trial Attorney, together, the government, and Family Dollar Stores, LLC, the defendant, represented by the undersigned counsel, hereby agree to the following terms and conditions in connection with the above-referenced proceedings. Dollar Tree, Inc., which is not a defendant in this matter, also agrees, pursuant to the authority granted by Dollar Tree, Inc.'s Board of Directors, to certain terms and obligations as described below.

1. **GUILTY PLEA:** The defendant will enter a plea of guilty to a one-count Information that charges the defendant with doing and causing to be done acts that caused articles of human food, animal food, cosmetics, drugs, and devices to become adulterated while such articles were held for sale in Family Dollar Distribution Center DC202 after shipment of one or more of their components in interstate commerce, a strict liability misdemeanor violation of Title 21, United States Code, Sections 331(k), 333(a)(1).

1

2.     **ELEMENTS OF THE CRIMES**:  The parties agree the elements of the offense to which the defendant will plead guilty are:

A.     The defendant committed an act with respect to food, cosmetics, drugs, and devices;

B.     while the food, cosmetics, drugs, and devices were held for sale after shipment in interstate commerce; and

C.     that resulted in such food, cosmetics, drugs, and devices being adulterated under 21 U.S.C. §§ 342(a), 361(c), and 351(a)(2)(A).

The defendant agrees that it is guilty of the offense charged and that each of these elements is true.

3.     **PENALTIES:**

The maximum statutory penalty for the charge set forth in the Information is:

A.     a fine of not more than $200,000 or twice the gross gain or loss resulting from the unlawful conduct (pursuant to 18 U.S.C. §§ 3571(c)-(d);

B.     forfeiture of all adulterated food, drug, device, and cosmetic products held at the Family Dollar Distribution Center 202 from January 1, 2021 through January 14, 2022;

C.     restitution as ordered by the Court;

D.      a term of probation of five (5) years (pursuant to 18 U.S.C. § 3561(c)(2)); and

E.     a $125 special assessment (pursuant to 18 U.S.C. § 3013(a)(1)(B)(iii)).

4.     **CORPORATE AUTHORIZATION**:  The defendant represents that it is authorized to enter into this plea agreement and addenda (collectively, "Plea Agreement").  Dollar

2

Tree, Inc., a non-defendant signatory to this Plea Agreement, represents that it is authorized to enter into certain terms and obligations in the Plea Agreement. The United States agrees that Family Dollar Stores, LLC may enter its misdemeanor guilty plea through its General Counsel or such of its outside counsel as Dollar Tree, Inc. shall designate. The United States agrees that Dollar Tree, Inc. may agree to certain terms and obligations in this Plea Agreement through its General Counsel or such of its outside counsel as Dollar Tree, Inc. shall designate.

Family Dollar Stores, LLC and Dollar Tree, Inc. agree that the General Counsel of Dollar Tree, Inc. or such of its outside counsel as Dollar Tree, Inc. shall designate, will be present for the imposition of sentence, on a date to be determined by the Court.

Within two weeks of the execution of this Plea Agreement, Dollar Tree, Inc. and Family Dollar Stores, LLC will provide to the United States and to the Court written evidence, in the form of Attachment A to this Plea Agreement, certifying that the defendant and Dollar Tree, Inc. are authorized to enter into and comply with all of the provisions of this Plea Agreement that are applicable to each. Such corporate resolution shall designate the General Counsel, or such outside counsel as Dollar Tree, Inc. shall designate, for the defendant and Dollar Tree, Inc. who is authorized to take the actions specified in this Plea Agreement, and shall also state that all legal formalities for such authorizations have been observed in the form attached to this Plea Agreement.

5.   **WAIVERS**:   The defendant acknowledges that it has been advised of and fully understands the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law. The defendant further understands that by entering into this Plea Agreement, it is waiving certain constitutional rights, including, without limitation, the following:

USAO-EDAR-2023

A.   The right to appeal or collaterally attack, to the full extent of the law, all non-jurisdictional issues, including any forfeiture or restitution order, as follows: (1) the defendant waives the right to appeal all non-jurisdictional issues including, but not limited to, any issues relating to pre-trial motions, hearings and discovery and any issues relating to the negotiation, taking or acceptance of the guilty plea or the factual basis for the plea, including the sentence imposed or any issues that relate to the establishment of the Guideline range, except that the defendant reserves the right to appeal claims of prosecutorial misconduct; (2) the defendant expressly acknowledges and agrees that the United States reserves its right to appeal the defendant's sentence under Title 18, United States Code, Section 3742(b) and *United States v. Booker*, 543 U.S. 220 (2005); (3) the defendant waives all rights to collaterally attack the conviction and sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims based on ineffective assistance of counsel or prosecutorial misconduct; (4) the defendant waives the right to appeal the Court's determination of the amount of restitution and subsequent restitution order, if any; and (5) the defendant waives the right to appeal the Court's determination of any forfeiture issues and subsequent forfeiture order, if any.

B.   The right to plead not guilty or to persist in that plea if it has already been made, and the right to a speedy and public trial before a jury;

4

C.      The right to be presumed innocent and to have the burden of proof placed on the United States to establish guilt beyond a reasonable doubt;

D.      The right to confront and cross examine witnesses;

E.      The right to testify on its own behalf if the defendant so chooses, or, the right to remain silent and not be compelled to testify, and to have that choice not used against the defendant; and

F.      The right to call witnesses and to require those witnesses to appear by issuing subpoenas.

6.      **SENTENCING GUIDELINES**: The defendant understands and acknowledges that the United States Sentencing Guidelines ("USSG") promulgated by the United States Sentencing Commission provide guidance for the sentencing of corporate defendants, except that pursuant to USSG §§ 8C2.1 and 8C2.10, the United States Sentencing Guidelines pertaining to the sentencing of organizations do not determine the fine range in cases involving misdemeanor FDCA crimes. Instead, the fine is to be determined pursuant to 18 U.S.C. §§ 3553 and 3571. All other sections of Chapter Eight of the Sentencing Guidelines that are applicable to corporate defendants are applicable in the above-captioned case, including provisions for probation and community service.

7.      **AGREED DISPOSITION**:

The United States and the defendant agree, pursuant to Fed. R. Crim. P. 11(c)(1)(C), that the following is the appropriate disposition of this matter:

A.      <u>Fine</u>. On the date of sentencing, Family Dollar Stores, LLC shall pay a total criminal fine in the amount of two hundred thousand dollars ($200,000), to

5                                         USAO-EDAR-2023

be paid by cashier's check or money order as directed by the Court, made payable to "Clerk, United States District Court."

B.   <u>Mandatory Special Assessment</u>.   On the date of sentencing, Family Dollar Stores, LLC agrees to pay to the United States a special assessment of $125, as required by 18 U.S.C. § 3013(a)(1)(B)(iii).   This special assessment is to be paid by cashier's check or money order as directed by the Court, made payable to "Clerk, United States District Court."

C.   <u>Forfeiture</u>.   The defendant agrees to forfeit $41,475,000 within five business days of the Court's entry of judgment and conviction.   The defendant agrees to sign any documentation necessary to accomplish the forfeiture.

D.   Consistent with the considerations outlined in U.S.S.G. § 8D1.1, the defendant and the government agree that there shall be no corporate probation in view of the remedial measures taken by the defendant to prevent future adulteration of FDA-regulated products while those products are held for sale, as outlined below in the factual statement.

8.      **CORPORATE COMPLIANCE PROGRAM AND REPORTING:**   For a period beginning on the date of sentencing and ending thirty-six (36) months from that date (the "Compliance Term"), Dollar Tree, Inc. and the defendant agree to comply with the terms of the Corporate Compliance Program and Compliance Reporting Requirements as set forth in Attachments B and C to this Plea Agreement. Dollar Tree, Inc. and the defendant agree, however, that in the event the government determines, in its sole discretion, that they have failed to completely perform or fulfill each of the obligations relating to Dollar Tree, Inc. and the defendant's compliance program and reporting, the government, in its sole discretion, may impose

USAO-EDAR-2023

an extension of the Compliance Term for up to a total additional time period of one year, without prejudice to the government's right to proceed as provided in Paragraph 15 below. Conversely, in the event the government finds, in its sole discretion, that there exists a change of circumstances sufficient to eliminate the need for the reporting requirements in Attachment C, and that the other provisions of the Plea Agreement have been satisfied, the Compliance Term may be terminated early.

9.    **ASSET FORFEITURE:**

The defendant agrees to pay a forfeiture money judgment in the amount of $41,475,000, which represents the value of the FDA-regulated product caused to be adulterated by the defendant's crimes. The defendant agrees to hold the United States, its agents and employees harmless from any claims in connection with the seizure or forfeiture of property covered by this Plea Agreement. The defendant understands that, unless the Attorney General or an authorized designee determines otherwise, the forfeiture of assets described above shall not be counted towards satisfaction of any special assessment, fine, restitution, or any other penalty the court may impose.

The defendant agrees not to assist any other individual in contesting the forfeiture of the assets described above and agrees that there was reasonable cause to seize those items. The defendant also agrees to prevent the disbursement of the assets described above if the disbursements are within the defendant's direct or indirect control. The defendant agrees to take all steps requested by the United States to pass clear title to the above-described assets to the United States, including, but not limited to, the execution of the Consent Decree of Forfeiture and the completion of any other legal documents required for the transfer of title to the United States.

Further, the defendant withdraws all previously filed claims to, waives all interest in, and consents to the forfeiture or abandonment of the above-described assets. The United States has the discretion to determine whether the forfeiture or abandonment will be accomplished through an administrative or judicial proceeding, which includes any criminal, civil, state, or federal action. The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rule of Criminal Procedure 32.2 regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant acknowledges that the forfeiture of assets is part of the sentence that may be imposed in this case and waives the provision of Rule 11(b)(1)(J) that requires the Court to advise the defendant of this consequence at the time the guilty plea is accepted. The defendant waives any right it may have to: (1) receive notice of any non-judicial forfeiture proceeding within the time frames provided in Title 18, United States Code, Section 983, and (2) have the property returned to it if notice is not sent within those prescribed time frames. The defendant knowingly and voluntarily waives any right to receive notice of and to submit a statement of interest in any abandonment proceeding.

The defendant waives all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture or abandonment carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture or abandonment constitutes an excessive fine or punishment.

10.  **FACTUAL STATEMENT**:

Family Dollar Stores, LLC ("the Company") is a limited liability company registered in Delaware.  It is responsible for, among other things, the operation of the network of Family Dollar distribution centers that receive merchandise, store it, and ship it to individual Family Dollar stores

USAO-EDAR-2023

for purchase by consumers. Family Dollar stores primarily sell consumables and household items, and most of their products are less than $20. Family Dollar Stores, LLC (through its subsidiary Family Dollar Services, LLC) operated DC202, a distribution center located in West Memphis, Arkansas that serviced 404 Family Dollar stores in six states: Alabama, Missouri, Mississippi, Louisiana, Arkansas, and Tennessee. Operating since 1994, the 850,000 sq. ft. warehouse was the second oldest and least productive Family Dollar distribution center. Among other items, the warehouse received FDA-regulated products, including human and animal food, cosmetics, over-the-counter drug products, and medical devices, in interstate commerce. It received over 14,000 inbound truck loads per year and shipped, on average, 1.3 million cases of product worth $32.3 million per month.

In 2019, the Company effectively abandoned the miles-long internal conveyor system that was previously used to pick product for shipment in the warehouse. In lieu of the extensive conveyor system, which was left in place, employees drove pallet trucks to select items from pallets stored in racks throughout the warehouse. Company employees noted a resulting increase in product spills and problems with aisle sanitation in DC202, which also struggled with numerous, frequently-damaged dock doors that could have provided access points for pests.

Company employees began receiving reports of an increase in mouse and pest issues with DC202's deliveries to stores in August 2020. By the end of 2020, certain stores again reported receiving rodents and rodent-damaged products in their shipments from the DC.

Beginning no later than January 2021, some Company employees were aware that the sanitation conditions at DC202 were such that FDA-regulated products became adulterated and were shipped to Family Dollar stores. Despite this, however, the Company did not take adequate

USAO-EDAR-2023

steps to prevent adulteration of FDA-regulated product while it was being held for sale at DC202 or to cease shipping adulterated FDA-regulated products from DC202 in interstate commerce.

In March and April 2021, Arkansas Department of Health inspectors reported seeing live rodents and contaminated products at DC202, and they cited the Company for its failure to take effective measures to exclude vermin. DC202 and corporate managers began discussing the need to fumigate the warehouse and requested bids as store complaints about rodent-impacted shipments continued. A spreadsheet of rodent captures made by a warehouse maintenance worker at the time reported large numbers of rodents caught in the two months from late March through late May 2021.

By July 2021, roof rats had established a presence at DC202. The rats used the warehouse's abandoned conveyer system to travel freely throughout the facility. An employee filed an OSHA complaint regarding employees' exposure to rodents in the warehouse, and in August 2021, one of the Company's regional regulatory compliance specialists circulated findings that the rodent problem was "very noticeable" since January 2021, and that the "rodent infestation is a major issue" in DC202.

On January 11, 2022, FDA began inspecting the warehouse and found a serious rodent infestation and products contaminated with rodent filth. Inspectors observed live rodents, dead rodents in varying states of decay, rodent feces and urine, and evidence of gnawing, nesting, and rodent odors throughout the facility, in addition to dead birds and bird droppings. The Company continued to ship FDA-regulated products from DC202 to stores until at least January 13. DC202 was fumigated on January 15 and 16, 2022, resulting in a reported extermination of 1,270 rodents.

On February 18, 2022, the Company voluntarily recalled all drugs, medical devices, cosmetics, and human and animal food products sold in the 404 stores serviced by DC202 on or

after January 1, 2021. On May 6, 2022, the Company informed FDA that it was decommissioning DC202.

The Company received a Warning Letter from FDA on November 8, 2022, that identified serious violations at the DC202 facility that caused the food, drugs, cosmetics, and devices held there under insanitary conditions to become adulterated. These included the Company's failure to take effective measures to exclude pests, failure to maintain the physical facilities in an adequate state of repair and adequately clean and sanitary condition, and failure to keep the grounds in a condition to protect against the contamination of food, cosmetics, drugs, and devices.

From early 2021 until January 2022, DC202 was insanitary, and the conditions were broad and pervasive such that FDA-regulated products were held under insanitary conditions whereby they may have become contaminated. During that period, at least $41,475,000 in FDA-regulated products, including human and animal food, drugs, devices, and cosmetics, moved through the facility.

In addition to initiating a voluntary recall of all FDA-regulated products shipped from DC202 and decommissioning DC202, Dollar Tree, Inc. significantly enhanced and continues to improve its compliance program, preventative measures, and remediation capabilities to prevent adulteration of FDA-regulated product while it is held for sale at Family Dollar distribution centers. Dollar Tree, Inc. has done this by working with a third-party FDA consulting firm to create and implement over 50 standard operating procedures on topics such as food safety, sanitation, pest prevention and management, receiving and shipping controls, and handling damaged product. Dollar Tree, Inc. augmented its training program with mandatory training for employees on standard operating procedures and FDA and USDA regulatory topics. Dollar Tree, Inc. also developed enhanced internal and external auditing and monitoring measures at

11                                                          USAO-EDAR-2023

distribution centers and stores to ensure product safety and quality and compliance with regulatory requirements, as well as to track and escalate key pest-related trends.

Dollar Tree, Inc. created new positions, including Director of Food Safety and Sanitation, and restructured departments at all levels to increase focus on food safety, regulatory compliance, accountability, and transparency. The distribution center operations department underwent a major restructuring, including bringing in new management for distribution center operations at all levels and creation of a new Safety/Sanitation/Compliance Manager position within each distribution center, who is primarily responsible for employee safety, environmental safety, sanitation, and regulatory compliance at each distribution center.

11.   **COOPERATION**:   The government acknowledges that the defendant has provided extensive cooperation with its investigation, including by conducting a thorough internal investigation and providing information obtained through its internal investigation, which allowed the government to preserve and obtain evidence as part of its own independent investigation; responding to requests from the government promptly; making detailed factual presentations to the government that distilled key factual information; identifying issues and facts that would likely be of interest to the government proactively; and collecting and producing extensive documentation to the government.

The defendant acknowledges that its prior, ongoing, and future cooperation is important and a material factor underlying the decision by the government to enter into this Plea Agreement. The defendant and Dollar Tree, Inc. agree to continue to cooperate fully with the government as may be reasonably requested in relation to the facts described in the Plea Agreement, subject to any protections afforded by applicable law and regulations, the attorney-client privilege, attorney

12   USAO-EDAR-2023

work product doctrine, and any other applicable legal privilege. That cooperation includes, but is not limited to, the following:

A.    Upon request by the government, the defendant shall provide to the government complete and truthful non-privileged information regarding the defendant's knowledge of any and all potential criminal activities of any persons in relation to the facts described in this Plea Agreement. Cooperation under this Paragraph shall include that upon request of the government, the defendant shall designate knowledgeable employees, agents, or attorneys to provide complete, truthful, and accurate non-privileged information and materials to the government as described in this Paragraph;

B.    Upon request by the government, the defendant shall provide all non-privileged documents, records, and other tangible evidence in the defendant's possession, custody, or control as may reasonably be requested by the government. Cooperation under this Paragraph shall include identification of all documents known to the defendant that may be material to any and all potential criminal activities related to the facts described in this Plea Agreement, including granting permission to access non-privileged materials held by third parties;

C.    Upon request by the government, the defendant shall use best efforts to make available, for interviews or testimony, as requested by the government, present or former officers, directors, employees, agents and consultants of the defendant. This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with the government and law enforcement agents. Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the

USAO-EDAR-2023

defendant, may have material information regarding any and all potential criminal activities related to the facts described in this Plea Agreement;

D.    The defendant agrees to truthfully provide all information to the Probation Office as is needed for preparation of the pre-sentence report; and

E.    The defendant agrees to execute all waivers necessary for the preparation of the pre-sentence report.

In exchange for the defendant's cooperation in the investigation and prosecution of offenses related to the facts contained in this Plea Agreement, the government agrees that the government will not use any truthful statements, testimony or information provided by the defendant pursuant to this Paragraph against the defendant at sentencing or as the basis for further prosecution, except that a) the government may use testimony or information provided by the defendant in prosecutions of the defendant's employees; b) the government may use testimony or information provided by the defendant for impeachment; and c) the information provided to the Probation Office pursuant to Paragraph 11.D may be used for purposes of sentencing.

12.    **DOUBLE JEOPARDY AND SUCCESSIVE PROSECUTION**:  The United States Attorney for the Eastern District of Arkansas and the Department of Justice's Consumer Protection Branch will bring no further charges against the defendant for any acts or conduct arising out of the events described in the Information, which is the subject of this action, unless the defendant breaches this Plea Agreement.

13.    **RECORDS**:  The defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any

14

records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the

Privacy Act of 1974, 5 U.S.C. Section 552a.

14.   **CIVIL CLAIMS BY THE GOVERNMENT**:  Except to the extent otherwise

expressly specified herein, this Plea Agreement does not bar or compromise any civil or

administrative claim pending or that may be made against the defendant by the government,

including but not limited to tax matters.

15.   **EFFECT OF THE DEFENDANT'S BREACH OF PLEA AGREEMENT**: The

defendant acknowledges and understands that if the defendant violates any term of this Plea

Agreement, engages in any further criminal activity prior to sentencing, or fails to appear for any

subsequent proceeding including sentencing, then the United States shall have, in addition to all

other rights and remedies otherwise available, the right to:

> A.   terminate this Plea Agreement; or
>
> B.   proceed with this Plea Agreement and: (1) deny any and all benefits to which the defendant would otherwise be entitled under the terms of this Plea Agreement; and/or (2) advocate for any sentencing enhancement that may be appropriate.

If the government receives evidence that the defendant has violated any term of this Plea

Agreement, the government agrees to give the defendant written notice of any alleged violation

before terminating the Plea Agreement.  Within forty-five (45) days of receipt of such notice, the

defendant shall have the opportunity to respond to the government in writing to explain the nature

and circumstances of such alleged violation, as well as the actions the defendant has taken to

address and remediate the situation.  The government shall consider the defendant's written

explanation before making a determination of whether the defendant has breached this agreement.

In the event the United States elects to terminate this Plea Agreement, the United States shall be released from any and all obligations hereunder. If this Plea Agreement is terminated or if the defendant's conviction ultimately is overturned, then the United States retains the right to file any and all charges which were not filed because of this Plea Agreement.

The defendant hereby knowingly and voluntarily waives any defense based upon the applicable statute of limitations and/or the Speedy Trial Act, for any charges reinstated or otherwise filed against the defendant as a result of the defendant's breach of this Plea Agreement, so long as the United States initiates any otherwise time barred action within one year of termination or revocation of this Plea Agreement.

In the event that the Plea Agreement is terminated or if the defendant successfully moves to withdraw its plea, any statement made by the defendant in negotiation of, or in reliance on this Plea Agreement, including any statements made in the course of a proffer, this Plea Agreement, the stipulations in paragraph 5 of this Plea Agreement, the addenda to the Plea Agreement, and the plea colloquy:

       C.     may be used in the United States' case in chief and to cross examine the defendant should it testify in any subsequent proceeding; and/or

       D.     any leads derived therefrom may be used by the United States.

The defendant waives any and all rights to the contrary and shall assert no claim under the United States Constitution, any statute, or any rule of procedure or evidence to the contrary, including Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f). The defendant has been advised of its rights pursuant to Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f) and waives these rights.

16

USAO-EDAR-2023

16.    **PARTIES:** This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Arkansas, the Consumer Protection Branch, the defendant, and Dollar Tree, Inc. It does not bind any United States Attorney outside the Eastern District of Arkansas, nor does it bind any other federal, state, or local prosecuting, administrative, or regulatory authority.

17.    **MISCELLANEOUS:**

MODIFICATION:   No term or provision contained herein may be modified, amended, or waived except by express written agreement signed by the party to be bound thereby.

HEADINGS AND CAPTIONS:  Subject headings and captions are included herein for convenience purposes only and shall not affect the interpretation of this Plea Agreement.

WAIVER:  No waiver of a breach of any term or provision of this Plea Agreement shall operate or be construed as a waiver of any subsequent breach or limit or restrict any other right or remedy otherwise available. Any waiver must be expressly stated in writing signed by the party to be bound thereby.

RIGHTS AND REMEDIES CUMULATIVE:   The rights and remedies of the United States expressed herein upon any breach hereunder by the defendant are cumulative and not exclusive of any rights and remedies otherwise available to the United States in the event of any breach of this Plea Agreement by the defendant.

JOINT NEGOTIATION:  This Plea Agreement has been mutually negotiated by the parties hereto, and any uncertainty or ambiguity existing herein shall not be interpreted against any party by reason of its drafting of this Plea Agreement, but instead shall be interpreted according to the application of the general rules of interpretation for arms-length agreements.

USAO-EDAR-2023

18.    **NO OTHER TERMS:**   This document and the addenda completely reflect all promises, agreements and conditions made between the parties, constitute the entire agreement between the parties and supersedes any and all prior agreements or understandings between the parties, oral or written, with respect to the subject matter hereof.

19.    **APPROVALS AND SIGNATURES:**

DEFENDANT:    The defendant has read this Plea Agreement and carefully reviewed every part of it with its attorney. The defendant understands and voluntarily agrees to the terms and condition of this Plea Agreement. Further, the defendant has consulted with its attorney and fully understands its rights with respect to the provisions of the United States Sentencing Guidelines which may apply to this case. No other promises or inducements have been made to the defendant, other than those expressly contained in this Plea Agreement. In addition, no one has threatened or forced the defendant in any way to enter into this Plea Agreement. The defendant further acknowledges that the defendant has entered into this Plea Agreement consciously and deliberately, by the defendant's free choice, and without duress, undue influence or otherwise being forced or compelled to do so, and this Plea Agreement constitutes the legal, valid and binding obligation of the defendant, fully enforceable against the defendant in accordance with its terms. Finally, the defendant is satisfied with the representation of its attorney in this case.

DEFENSE COUNSEL:  Defense counsel acknowledges that he is the attorney for the defendant, and that he has fully and carefully discussed every part of this Plea Agreement with the defendant. Further, defense counsel has fully and carefully advised the defendant of the defendant's rights, of possible defenses, and of the consequences of entering into this Plea Agreement, including the possible consequences of not complying with this Plea Agreement. To

USAO-EDAR-2023

counsel's knowledge, the defendant's decision to enter into this Plea Agreement is an informed and voluntary decision.

[End of text. Signature page to follow.]

USAO-EDAR-2023

DATED this _26_ day of _February_ 2024.

AMANDA N. LISKAMM
Director
Department of Justice
Consumer Protection Branch

GABRIEL H. SCANNAPIECO
Assistant Director

By: PATRICK R. RUNKLE
Senior Litigation Counsel
ALISHA M. CROVETTO
Trial Attorney
PO Box 386
Washington, D.C. 20044
(202) 532-4723 (Runkle)
(202) 305-7196 (Crovetto)
Patrick.r.runkle@usdoj.gov
Alisha.m.crovetto@usdoj.gov

JONATHAN D. ROSS
United States Attorney
Eastern District of Arkansas

By: JULIE PETERS
Assistant United States Attorney
Bar No. AR2000109
CAMERON C. MCCREE
Assistant United States Attorney
Bar No. AR2007148
Post Office Box 1229
Little Rock, Arkansas 72203
(501) 340-2600
Julie.peters@usdoj.gov
Cameron.mccree@usdoj.gov

USAO-EDAR-2023

**FOR FAMILY DOLLAR STORES, LLC**

WILLIAM A. WADDELL, JR.
(501) 370-1510
Waddell@fridayfirm.com
Bar No. 84154
KAT HODGE
Bar No. AR 2003-100
(501) 370-3309
khodge@fridayfirm.com
**Friday, Eldredge & Clark, LLP**
400 West Capitol Avenue, Suite 2000
Little Rock, AR 72201

PATRICK F. STOKES
Bar No. 1048470 (*pro hac vice* pending)
(202) 955-8504
Pstokes@gibsondunn.com
JONATHAN PHILLIPS
Bar No. 989061 (*pro hac vice* pending)
(202) 887-3546
Jphillips@gibsondunn.com
**Gibson, Dunn & Crutcher, LLP**
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036

*Attorneys for Defendant*


**FOR DOLLAR TREE, INC.**

WILLIAM A. WADDELL, JR.
(501) 370-1510
Waddell@fridayfirm.com
Bar No. 84154
KAT HODGE
Bar No. AR 2003-100
(501) 370-3309
khodge@fridayfirm.com
**Friday, Eldredge & Clark, LLP**
400 West Capitol Avenue, Suite 2000
Little Rock, AR 72201

PATRICK F. STOKES
Bar No. 1048470 (*pro hac vice* pending)
(202) 955-8504
Pstokes@gibsondunn.com
JONATHAN PHILLIPS
Bar No. 989061 (*pro hac vice* pending)
(202) 887-3546
Jphillips@gibsondunn.com
**Gibson, Dunn & Crutcher, LLP**
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036

*Attorneys for Dollar Tree, Inc.*

**ATTACHMENT A**

**CERTIFICATE OF CORPORATE RESOLUTIONS FOR
FAMILY DOLLAR STORES, LLC**

WHEREAS, Family Dollar Stores, LLC (the "Company") has been engaged in discussions with the United States Department of Justice, Consumer Protection Branch, and the Office of the United States Attorney for the Eastern District of Arkansas (collectively, the "Offices") regarding issues arising in relation to violations of the Federal Food, Drug, and Cosmetic Act ("FDCA"); and

WHEREAS, in order to resolve such discussions, it is proposed that the Company enter into a Plea Agreement (the "Agreement") with the Offices; and

WHEREAS, outside counsel for the Company has advised the Manager of the Company of its rights, possible defenses, the Sentencing Guidelines' provisions, and the consequences of entering into such agreement with the Offices;

Therefore, the Manager of the Company has RESOLVED that:

1.      The Company (a) acknowledges the filing of the 1-count Information charging the Company with one misdemeanor violation of the FDCA, namely doing and causing to be done acts that caused articles of food, drugs, devices, and cosmetics to become adulterated while such articles were held for sale after shipment of one or more of their components in interstate commerce in violation of Title 21, United States Code, Sections 331(k), 333(a)(1); (b) waives any right it might have to indictment on such charges and enters into the Agreement with the Offices; and (c) agrees to pay a total criminal monetary amount of $41,475,000 under the Agreement with respect to the conduct described in the Information;

2.      The Company accepts the terms and conditions of this Agreement, including, but not limited to, the waiver of rights set forth in Paragraphs 5, 9, 13, and 15 of the Agreement;

A-1

3.     The outside counsel of the Company, Patrick Stokes, is hereby authorized, empowered and directed, on behalf of the Company, to execute the Agreement substantially in such form as reviewed by the Manager with such changes as the outside counsel of the Company, Patrick Stokes, may approve;

4.     The outside counsel of the Company, Patrick Stokes, is hereby authorized, empowered, and directed to enter the guilty plea, as provided in the Agreement, on behalf of the Company in the United States District Court for the Eastern District of Arkansas and to appear on behalf of the Company at sentencing;

5.     The outside counsel of the Company, Patrick Stokes, is hereby authorized, empowered, and directed to take any and all actions as may be necessary or appropriate and to approve the forms, terms, or provisions of any agreement or other documents as may be necessary or appropriate, to carry out and effectuate the purpose and intent of the foregoing resolutions; and

6.     All of the actions of the outside counsel of the Company, Patrick Stokes, which actions would have been authorized by the foregoing resolutions except that such actions were taken prior to the adoption of such resolutions, are hereby severally ratified, confirmed, approved, and adopted as actions on behalf of the Company.

Date: __Jan 23 , 2024__          By: _____

Corporate Secretary
Family Dollar Stores, LLC

A-2

## CERTIFICATE OF CORPORATE RESOLUTIONS
## FOR DOLLAR TREE, INC.

WHEREAS, Dollar Tree, Inc. has been engaged in discussions with the United States Department of Justice, Consumer Protection Branch, and the Office of the United States Attorney for the Eastern District of Arkansas (collectively, the "Offices") regarding issues arising in relation to violations of the Federal Food, Drug, and Cosmetic Act ("FDCA"); and

WHEREAS, in order to resolve such discussions, it is proposed that Dollar Tree, Inc. agree to certain terms and obligations of a Plea Agreement (the "Agreement") among Family Dollar Stores, LLC and the Offices; and

WHEREAS, outside counsel for Dollar Tree, Inc., has advised the Board of Directors of Dollar Tree, Inc. of Dollar Tree, Inc.'s rights, possible defenses, the Sentencing Guidelines' provisions, and the consequences of agreeing to such terms and obligations of the Agreement among Family Dollar Stores, LLC and the Offices;

Therefore, the Board of Directors has RESOLVED that:

1.      Dollar Tree, Inc. (a) acknowledges the filing of the 1-count Information charging Family Dollar Stores, LLC with one misdemeanor violation of the FDCA, namely doing and causing to be done acts that caused articles of food, drugs, devices, and cosmetics to become adulterated while such articles were held for sale after shipment of one or more of their components in interstate commerce in violation of Title 21, United States Code, Sections 331(k), 333(a)(1); and (b) undertakes certain obligations under the Agreement among Family Dollar Stores, LLC and the Offices; and (c) agrees to accept a monetary penalty against Family Dollar Stores, LLC totaling $41,475,000, and to pay such penalty to the United States Treasury with respect to the conduct described in the Information if Family Dollar Stores, LLC does not pay such monetary penalty within the time period specified in the Agreement;

2.      Dollar Tree, Inc. accepts the terms and conditions of the Agreement to the extent identified therein;

3.      The outside counsel of Dollar Tree, Inc., Patrick Stokes, is hereby authorized, empowered and directed, on behalf of the Dollar Tree, Inc., to execute the Agreement substantially in such form as reviewed by this Board of Directors with such changes as the outside counsel of Dollar Tree, Inc., Patrick Stokes, may approve;

4.      The outside counsel of Dollar Tree, Inc., Patrick Stokes, is hereby authorized, empowered, and directed to agree to certain terms and obligations of the Agreement, on behalf of Dollar Tree, Inc. in the United States District Court for the Eastern District of Arkansas;

5.      The outside counsel of Dollar Tree, Inc., Patrick Stokes, is hereby authorized, empowered, and directed to take any and all actions as may be necessary or appropriate and to approve the forms, terms, or provisions of any agreement or other documents as may be necessary or appropriate, to carry out and effectuate the purpose and intent of the foregoing resolutions; and

6.      All of the actions of the outside counsel of Dollar Tree, Inc., Patrick Stokes, which actions would have been authorized by the foregoing resolutions except that such actions were taken prior to the adoption of such resolutions, are hereby severally ratified, confirmed, approved, and adopted as actions on behalf of Dollar Tree, Inc.

Date:  January 23, 2024          By:  _____
                                       Corporate Secretary
                                       Dollar Tree, Inc.

A-4

ATTACHMENT B

## CORPORATE COMPLIANCE PROGRAM

In order to address any deficiencies in its internal controls, compliance code, policies, and procedures regarding compliance with the Federal Food, Drug, and Cosmetic Act ("FDCA") and its associated regulations as it relates to the warehousing and distribution to stores of food, drugs, devices, and cosmetics, ("Relevant Law"), Dollar Tree, Inc. (the "Company"), on behalf of itself and its subsidiaries and affiliates, including the defendant Family Dollar Stores, LLC, agrees to continue to conduct, in a manner consistent with all of its obligations under this Plea Agreement, appropriate reviews of its existing internal controls, compliance code, policies, and procedures.

Where necessary and appropriate, the Company agrees to adopt a new or to modify its existing compliance program, including internal controls, compliance code, policies, and procedures, to ensure that it maintains an effective compliance program that is designed, implemented, and enforced to effectively deter and detect violations of the Relevant Law. At a minimum, this should include, but not be limited to, the following elements to the extent they are not already part of the Company's existing internal controls, compliance code, policies, and procedures:

### *Commitment to Compliance*

1.      The Company will ensure that its directors and senior management provide strong, explicit, and visible support and commitment to its corporate policy against violations of the Relevant Law and the Company's compliance codes, and demonstrate rigorous adherence by example.      The Company will also ensure that middle management, in turn, reinforce those standards and encourage employees to abide by them.      The Company will create and foster a

culture of ethics and compliance with the law in its day-to-day operations at all levels of the company.

### *Policies and Procedures*

2.      The Company will develop and promulgate a clearly articulated and visible corporate policy against violations of the Relevant Law, which policy shall be memorialized in a written compliance code or codes.

3.      The Company will develop and promulgate compliance policies and procedures designed to reduce the prospect of violations of the Relevant Law and the Company's compliance code, and the Company will take appropriate measures to encourage and support the observance of ethics and compliance policies and procedures against violation of the Relevant Law by personnel at all levels of the Company.  These policies and procedures shall apply to all directors, officers, and employees and, where necessary and appropriate, outside parties acting on behalf of the Company, such as agents, consultants, authorized representatives, distributors, contractors, suppliers (excluding suppliers of third-party brands), and joint venture partners (collectively, "Agents and Business Partners").  The Company shall notify all employees that compliance with the policies and procedures is the duty of individuals at all levels of the company.

4.      The Company will ensure that it has a system of procedures, including a system of internal controls, reasonably designed to ensure the maintenance of safety practices for FDA-regulated products.  This system shall be designed to provide reasonable assurances that:

    a.      appropriate food safety systems are adopted and exercised to prevent food from becoming adulterated while the Company holds it for sale at its United States based-distribution centers and to prevent any adulterated food held by the Company from being introduced into interstate commerce, including assuring that food is not held in insanitary

B-2

conditions at its United States-based distribution centers and that food that has become adulterated is not shipped to Company stores;

      b.    effective measures are taken to exclude pests from the Company's holding areas for FDA-regulated products in its United States-based distribution centers and to protect against contamination of such products on the premises by pests;

      c.    appropriate and effective internal chain-of-command reporting policies on FDCA compliance issues are adopted; and

      d.    appropriate hazard analyses are conducted and appropriate risk-based preventive controls are implemented to ensure that known and reasonably foreseeable hazards that could affect FDA-regulated products held at the Company's United States-based distribution centers are identified and that preventive controls are implemented to significantly minimize or prevent the occurrence of such hazards and provide assurances that such FDA-regulated products are not adulterated, including the monitoring of the performance of those controls and maintaining records of the monitoring.

### *Periodic Risk-Based Review*

5.    The Company will develop these compliance policies and procedures on the basis of a periodic risk assessment addressing the individual circumstances of the Company.

6.    The Company shall review its compliance policies and procedures designed to reduce the prospect of violations of the Relevant Law or the Company's compliance code no less than annually and update them as appropriate to ensure their continued effectiveness, taking into account relevant developments in the field, evolving industry standards, and the risk profile of the Company and its products.

### *Proper Oversight and Independence*

B-3

7.      The Company will assign responsibility to one or more senior corporate executives of the Company for the implementation and oversight of the Company's compliance code, policies, and procedures regarding the Relevant Law.  Such corporate official(s) shall have the authority to report directly to independent monitoring bodies, including internal audit, the Company's Board of Directors, or any appropriate committee of the Board of Directors, and shall have an adequate level of stature and autonomy from management as well as sufficient resources and authority to maintain such autonomy.

### *Training and Guidance*

8.      The Company will implement mechanisms designed to ensure that its compliance code, policies, and procedures regarding the Relevant Law are effectively communicated to all directors, officers, relevant employees, and, where necessary and appropriate, Agents and Business Partners.  These mechanisms shall include: (a) periodic training for all directors and officers, all employees in positions of leadership or trust or in positions that require such training (e.g., regulatory, quality, audit, legal, compliance), and, where necessary and appropriate, Agents and Business Partners; and (b) corresponding certifications by all such directors, officers, employees, and Agents and Business Partners, certifying compliance with the training requirements.  The Company will conduct training in a manner tailored to the audience's size, sophistication, or subject matter expertise and, where appropriate, will discuss prior compliance incidents.

9.      The Company will maintain, or where necessary establish, an effective system for providing guidance and advice to directors, officers, employees, and, where necessary and appropriate, Agents and Business Partners, on complying with the Company's compliance code, policies, and procedures regarding the Relevant Law, including when they need advice on an urgent basis.

***Internal Reporting and Investigation***

10.     The Company will maintain, or where necessary establish, an effective system for internal and, where possible, confidential reporting by, and protection of, directors, officers, employees, and, where appropriate, Agents and Business Partners, concerning violations of the Relevant Law or the Company's compliance code, policies, and procedures regarding the Relevant Law.

11.     The Company will maintain, or where necessary establish, an effective and reliable process with sufficient resources for responding to, investigating, and documenting allegations of violations of the Relevant Law or the Company's compliance code, policies, and procedures regarding the Relevant Law.  The Company will handle the investigations of such complaints in an effective manner, including routing the complaints to proper personnel, conducting timely and thorough investigations, and following up with appropriate discipline where necessary.

***Enforcement and Discipline***

12.     The Company will implement mechanisms designed to effectively enforce its compliance code, policies, and procedures, including appropriately incentivizing compliance and disciplining violations.

13.     The Company will institute appropriate disciplinary procedures to address, among other things, violations of the Relevant Law and the Company's compliance code, policies, and procedures regarding the Relevant Law by the Company's directors, officers, and employees. Such procedures should be applied consistently, fairly, and in a manner commensurate with the violation, regardless of the position held by, or perceived importance of, the director, officer, or employee.  The Company shall implement procedures to ensure that where misconduct is discovered, reasonable steps are taken to remedy the harm resulting from such misconduct, and to

ensure that appropriate steps are taken to prevent further similar misconduct, including assessing the internal controls, compliance code, policies, and procedures and making modifications necessary to ensure the overall compliance program regarding the Relevant Law is effective.

### *Third-Party Relationships*

14.     The Company will institute appropriate risk-based due diligence and compliance requirements regarding the Relevant Law that pertain to the retention and oversight of Agents and Business Partners, including:

      a.     conducting adequate due diligence with respect to the risks posed by the use of Agents and Business Partners, including their reputations and relationships, if any, with regulatory authorities and agencies;

      b.     informing Agents and Business Partners of the Company's commitment to abiding by the Relevant Law and of the Company's compliance code, policies, and procedures regarding the Relevant Law; and

      c.     seeking a reciprocal commitment from Agents and Business Partners.
The Company also will engage in ongoing risk-based monitoring of Agents and Business Partners through updated due diligence, training, audits, and/or annual compliance certifications by the third party.

15.     Where necessary and appropriate, the Company will include standard provisions in agreements, contracts, and renewals thereof with Agents and Business Partners that are reasonably calculated to prevent violations of the Relevant Law, which may, depending upon the circumstances, include: (a) undertakings relating to compliance with the Relevant Law; (b) rights to conduct audits of the facilities, documents, and records of Agents and Business Partners to ensure compliance with the foregoing; and (c) rights to terminate Agents or Business Partners as

a result of any breach of the Relevant Law, the Company's compliance code, policies, or procedures, or the representations and undertakings related to such matters.

### *Mergers and Acquisitions*

16.     The Company will develop and implement policies and procedures for mergers and acquisitions requiring that the Company conduct appropriate risk-based due diligence on potential new business entities, including appropriate due diligence regarding the Relevant Law by legal and compliance personnel.

17.     The Company will ensure that the Company's compliance code, policies, and procedures regarding the Relevant Law apply as quickly as is practicable to newly acquired businesses or entities merged with the Company and will promptly:

a.     train the directors, officers, employees, and Agents and Business Partners consistent with Paragraph 8 above on the Relevant Law and the Company's compliance code, policies, and procedures regarding the Relevant Law; and

b.     where warranted, conduct an audit of all newly acquired or merged businesses as quickly as practicable concerning compliance with the Relevant Law.

### *Monitoring, Testing, and Remediation*

18.     In order to ensure that its compliance program does not become stale, the Company will conduct periodic reviews and testing of its compliance codes, policies, and procedures regarding the Relevant Law that are designed to evaluate and improve their effectiveness in preventing and detecting violations of the Relevant Law and the Company's compliance codes, policies, and procedures regarding the Relevant Law, taking into account relevant developments in the field, evolving industry standards, and the risk profile of the Company, and its products. The Company will ensure that compliance and control personnel have sufficient direct or indirect

B-7

access to relevant sources of data to allow for timely and effective monitoring and/or testing. Based on such review and testing and its analysis of any prior misconduct, the Company will conduct a thoughtful root cause analysis and timely and appropriately remediate to address the root causes.

ATTACHMENT C

## COMPLIANCE REPORTING REQUIREMENTS

Dollar Tree, Inc. (the "Company") agrees that, as part of this Plea Agreement ("Agreement"), it will report to the United States Department of Justice, Consumer Protection Branch, and the United States Attorney's Office for the Eastern District of Arkansas (collectively, the "Offices") periodically. Unless otherwise directed by the Offices in writing, the Company shall transmit copies of all work plans, reports, certifications, and other notices to the Offices as required herein by electronic mail to Consumer.Compliance@usdoj.gov and to any additional email addresses provided by the Offices. The subject line of the email must begin with the Company's name. In the event that electronic mail is unavailable, the notice may be sent by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail to an address provided by the Offices. Notice shall be effective upon actual receipt by the Offices.

During the Compliance Term as defined in the Agreement, the Company shall review, test, and update its compliance program and internal controls, policies, and procedures described in Attachment B. The Company shall be required to: (a) conduct an initial ("first") review and submit a first report and (b) conduct and prepare at least two follow-up reviews and reports, as described below. Prior to conducting each review, the Company shall be required to prepare and submit a work plan for the review. The Company shall also be required to submit additional types of reports on a periodic basis, as described below. The Company shall also, if requested by the Offices during the Compliance Term, provide additional information, including documents, or meet with the Offices regarding remediation, implementation, and testing of its compliance program and the internal controls, policies, and procedures described in Attachment B.

In conducting the reviews, the Company shall undertake the following activities, among others: (a) inspection of relevant documents, including the Company's current policies, procedures, and training materials concerning compliance with the Federal Food, Drug, and Cosmetic Act ("FDCA") and its associated regulations as it relates to the warehousing and distribution to stores of food, drugs, devices, and cosmetics ("Relevant Law"); (b) inspection and testing of the Company's systems procedures, and internal controls, including record keeping and internal audit procedures; (c) meetings with, and interviews of, relevant current and, where appropriate, former directors, officers, employees, business partners, agents, and other persons; and (d) analyses, studies, and, comprehensive testing of the Company's compliance program.

### *Written Work Plans, Reviews, Reports, and Certifications*

1. The Company shall conduct a first review and prepare a first report, followed by at least two follow-up reviews and reports.

2. Within sixty (60) calendar days after the date of sentencing, the Company shall, after consultation with the Offices, prepare and submit a written work plan to address the Company's first review. The Offices shall have thirty (30) calendar days after receipt of the written work plan to provide comments, which the Company shall incorporate into its written work plan.

3. With respect to each follow-up review and report, after consultation with the Offices, the Company shall prepare a written work plan within forty-five (45) calendar days after the submission of the prior report, and the Offices shall provide comments within thirty (30) calendar days after receipt of the written work plan, which the Company shall incorporate into its written work plan.

4.     All written work plans shall identify with reasonable specificity the activities the Company plans to undertake to review and test each element of its compliance program, as described in Attachment B.

5.     Any disputes between the Company and the Offices with respect to any written work plan shall be decided by the Offices in their sole discretion.

6.     No later than twelve (12) months after the date of sentencing, the Company shall submit to the Offices a first written report setting forth: (1) a complete description of its remediation efforts to date; (2) a complete description of the testing conducted to evaluate the effectiveness of the compliance program and the results of that testing; and (3) its proposals to ensure that its compliance program is reasonably designed, implemented, and enforced so that the program is effective in deterring and detecting violations of the Relevant Law.  A certification from the Chief Executive Officer of the Company and the Chief Ethics & Compliance Officer of the Company, in the form of executing the document attached as Attachment D to the Agreement, shall accompany the report.   The certification will be deemed a material statement and representation by the Company to the executive branch of the United States for purposes of 18 U.S.C. §§ 1001 and 1519, and it will be deemed to have been made in the judicial district in which the Agreement is filed.  With prior written approval of the Offices, the Company may extend the time period for issuance of the first report and certification.

### *Follow-up Reviews, Reports, and Certifications*

7.     The Company shall undertake at least two follow-up reviews, reports, and certifications, incorporating the views of the Offices on the Company's prior reviews, reports, and certifications, to further monitor and assess whether the Company's compliance program is

reasonably designed, implemented, and enforced so that it is effective at deterring and detecting violations of the Relevant Law.

8.      The first follow-up ("second") review, report, and certification shall be completed and delivered to the Offices by no later than twelve (12) months after the first report and certification is submitted to the Offices.

9.      The second follow-up ("third") review, report, and certification shall be completed and delivered to the Offices no later than thirty (30) calendar days before the end of the Compliance Term.

10.     With prior written approval of the Offices, the Company may extend the time period for submission of any of the follow-up reports and certifications.

### *Additional Reporting Requirements*

11.     The Company shall submit written reports to the Offices concerning Reportable Events on a quarterly basis. A Reportable Event is any matter that, after a reasonable opportunity to conduct an appropriate review or investigation of the allegations, a reasonable person would consider a material violation of the Relevant Law. A Reportable Event may be the result of an isolated event or a series of occurrences. Minor current Good Manufacturing Practice issues will not be considered a Reportable Event unless they constitute a significant compliance program failure. The written report shall include: (a) whether any Reportable Events have been determined to have occurred during the preceding calendar quarter, and providing updated information about Reportable Events that the Company determined to have occurred during any prior calendar quarter, as may be necessary in the reasonable determination of the Company or at the Offices' request; (b) a description of the Reportable Event, including the relevant facts, the positions of the persons involved, and the legal authorities implicated; (c) a description of the Company's actions

C-4

taken to investigate and correct the Reportable Event; and (d) a description of any further steps the Company plans to take to address the Reportable Event and prevent it from recurring. The written reports shall be submitted to the Offices no later than fifteen (15) calendar days after the end of each calendar quarter (that is, by January 15 for the calendar quarter ending December 31, April 15 for the calendar quarter ending March 31, July 15 for the calendar quarter ending June 30, and October 15 for the calendar quarter ending September 30), excepting any calendar quarter that ends within thirty (30) calendar days of the end of the Compliance Term.

### *Additional Information and Meetings During the Compliance Term*

12.     Upon request of the Offices in their sole discretion, the Company shall provide to the Offices additional information or documents regarding their compliance-related improvements, processes, and controls. The Company's cooperation pursuant to this Paragraph is subject to applicable law and regulations, as well as valid claims of attorney-client privilege or attorney work product doctrine; however, the Company must provide to the Offices a log of any information or cooperation that is not provided based on an assertion of law, regulation, or privilege, and the Company bears the burden of establishing the validity of any such an assertion.

13.     When the Offices deem it appropriate in their sole discretion, representatives from the Company and the Offices will meet to discuss the status of the review and reporting obligations, and any suggestions, comments, or improvements the Company may wish to discuss with or propose to the Offices.

### *Confidentiality of Submissions*

14.     Submissions by the Company, including the work plans and reports, will likely include proprietary, financial, confidential, and competitive business information. Moreover, public disclosure of the submissions could discourage cooperation, impede pending or potential

government investigations and thus undermine the objectives of the reporting requirement. For these reasons, among others, the submissions and the contents thereof are intended to remain and shall remain non-public, except as otherwise agreed to by the parties in writing, or except to the extent the Offices determine in their sole discretion that disclosure would be in furtherance of the Offices' discharge of their duties and responsibilities or is otherwise required by law.

ATTACHMENT D

## **CERTIFICATION**

To:    United States Department of Justice
       Consumer Protection Branch
       Attention: Corporate Compliance & Policy Unit

Re:    Plea Agreement Disclosure Certification

The undersigned certify, pursuant to Attachment C of the Plea Agreement ("Agreement") filed on [DATE] in the U.S. District Court for the Eastern District of Arkansas, by and between the United States Department of Justice, Consumer Protection Branch, and the United States Attorney's Office for the Eastern District of Arkansas (collectively, the "Offices") and Dollar Tree, Inc. (the "Company"), that the undersigned are aware of the Company's reporting obligations under Attachment C of the Agreement and have reviewed the Company's [first/second/third] written work plan and compliance report.  The undersigned further certify that to the best of the undersigneds' knowledge based on a reasonable inquiry, the Company's [first/second/third] compliance report has disclosed to the Offices all information required pursuant to Attachment C of the Agreement, which includes (1) a complete description of the Company's remediation efforts to date; (2) a complete description of the testing conducted to evaluate the effectiveness of the compliance program and the results of that testing; and (3) the Company's proposals to ensure that its compliance program is reasonably designed, implemented, and enforced so that the program is effective in deterring and detecting violations of the Federal Food, Drug, and Cosmetic Act ("FDCA") and its associated regulations as it relates to the warehousing and distribution to stores of food, drugs, devices, and cosmetics.  The undersigned further certify that to date, to the best of the undersigneds' knowledge based on a reasonable inquiry, the Company has disclosed to the Offices all Reportable Events as required by Attachment C of the Agreement.

The undersigned further acknowledge and agree that the reporting requirements contained in Attachment C of the Agreement and the representations contained in this certification constitute a significant and important component of the Agreement and the Offices' determination of whether the Company has satisfied its obligations under the Agreement.

The undersigned hereby certify that the undersigned are the Chief Executive Officer ("CEO") and Chief Ethics & Compliance Officer ("CECO") of the Company and have been duly authorized by the Company to sign this Certification on behalf of the Company.

This Certification shall constitute a material statement and representation by the undersigned and by, on behalf of, and for the benefit of, the Company to the executive branch of the United States for purposes of 18 U.S.C. § 1001, and such material statement and representation shall be deemed to have been made in the Eastern District of Arkansas.  This Certification shall also constitute a record, document, or tangible object in connection with a matter within the jurisdiction of a department and agency of the United States for purposes of 18 U.S.C. § 1519, and such record,

document, or tangible object shall be deemed to have been made in the Eastern District of Arkansas.

By: _____          Dated: _____
    [NAME]
    CEO
    Dollar Tree, Inc.


By: _____          Dated: _____
    [NAME]
    CECO
    Dollar Tree, Inc.

D-2